## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ )<br>RASHONDA CHARLES,               )<br>                    )<br>      Plaintiff,        )<br>                    )<br>      v.             )<br>                    )<br>MICHAEL J. ASTRUE,        )<br>Commissioner of Social Security  )<br>                    )<br>      Defendant.     )<br>_____) | Civil Action No. 10-02038 (RBW) |

## <u>MEMORANDUM OPINION</u>

This case arises from a claim brought under the Social Security Act ("SSA"), 42 U.S.C. § 405(g) (2006). Complaint ("Compl.") ¶ 3. The plaintiff alleges that the defendant's final administrative decision denying her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments under the SSA, 42 U.S.C. §§ 301-1377mm (2006), for the period of her unemployment starting on March 25, 2008 and ending on June 5, 2009, Plaintiff's Memorandum in Support of the Motion for Judgment of Reversal ("Pl.'s Mem.") at 2, is not based on substantial evidence, Compl. ¶ 6. Two motions are now before the Court: the plaintiff's Motion for Judgment of Reversal ("Pl.'s Mot."), and the defendant's Motion for Judgment of Affirmance ("Def.'s Mot."). For the reasons explained below, the Court will deny the defendant's motion and deny in part and grant in part the plaintiff's motion, resulting in the case being

remanded to the Social Security Administration for further proceedings in accordance with this

Memorandum Opinion.[1]

## I. BACKGROUND

A. Factual and Procedural Background

The plaintiff, Rashonda Charles, was a thirty-six-year-old Washington, D.C. resident

when this case was filed on November 29, 2010.  She had earlier applied for benefits under Title

II of the SSA, 42 U.S.C. §§ 401-433 (2006), and Title XVI of the SSA, 42 U.S.C. §§ 1381-1383f

(2006), in 2008.  Pl.'s Mem. at 1-2.  Prior to applying for these benefits, the plaintiff had been

employed as an instructor for mentally challenged individuals.  Id. at 2-3.  In her application for

benefits, she represents that she was unable to work from March 25, 2008, to June 5, 2009, due

to sarcidosis, asthma, and diabetes.  Id. at 2.  The plaintiff represents that these medical

conditions caused her to suffer from shortness of breath and extreme fatigue.  Id.  The plaintiff

had sought disability benefits for the period of time when she claims she was unable to work due

to her illness in 2008 and 2009.  Her claims have been denied by the Social Security

Administration at every step of the review process, which consisted of the following hearings

and decisions.  Id. at 1-2.

The plaintiff's claims were initially denied by the Social Security Administration in a

letter dated July 9, 2008.  Pl.'s Mem. at 1; A.R. at 59-62.  The Social Security Administration

denied reconsideration of the denial in a letter dated January 28, 2009.  A.R. at 55-58.  After this

denial, the plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Pl.'s Mem.

---

[1]　　　In addition to the previously cited materials, the Court considered the Administrative Record ("A.R.") and the Defendant's Memorandum in Support of the Motion for Judgment of Affirmance and in Opposition to the Motion for Judgment of Reversal ("Def.'s Mem."), along with their supporting exhibits, in rendering its decision.

at 1-2; A.R. at 48-51, and a hearing was scheduled for September 1, 2009.  A.R. at 208.  On the scheduled hearing date, the ALJ conducted a partial hearing after granting the plaintiff's request to postpone the hearing so that she could obtain counsel.  Id. at 211.  After the plaintiff left the hearing room, but before recessing the hearing, the ALJ questioned a vocational expert, Dr. James Ryan, on the record.  A.R. at 213-19.  The ALJ apparently took Dr. Ryan's testimony in spite of the postponement in an effort to "make maximum utilization of the government's resources."  Id. at 213-14.  The ALJ presented Dr. Ryan with five profiles of individuals with various physical limitations.  Id. at 215-17.  For each of the five profiles, the ALJ instructed the vocational expert to assume the individual had "the need to avoid excessive dust, fumes, chemicals, and poor ventilation, and excessive humidity or wetness."  Id. at 216.  Dr. Ryan provided testimony about the availability of jobs within the local economy for persons fitting each profile.  Id. at 217-19.

The plaintiff's hearing was eventually resumed on November 16, 2009.  Id. at 220.  On that date, the plaintiff testified that she had engaged in unskilled work requiring medium-to-heavy exertion as a job instructor for mentally challenged individuals.  Id. at 226.  She also stated that after a "severe asthma attack" in May 2008, she sought treatment at an emergency room, but was not hospitalized overnight.  Id. at 231.  The plaintiff further indicated that she was on several prescription drugs for both her breathing problems and her diabetes.  Id. at 232-35.  She testified that she had been a smoker, but quit after she "first became sick," id. at 235-36, and that her breathing problems were the primary cause of her disability.  Id. at 236-37.

The plaintiff indicated that she lived with her eleven-year-old son and although she was unable to do "too much" cooking, she was able to make "light meals."  Id. at 238-39.  She stated that she had difficulty doing household cleaning, due to the task being "a full day job with the

fumes, and the bleach and . . . trying to breathe and all that." Id. at 239-40.  She indicated that she relied on her son to dust, vacuum, sweep, and mop.  Id. at 239.  The plaintiff said her ability to perform trash hauling, laundry washing, dish washing, grocery shopping, and driving was "limited."  Id. at 240-41.  She testified that she had been able to walk only about seven yards, lift ten pounds, and stand for five to ten minutes before becoming tired.  Id. at 243-45.  The plaintiff also said that she could not sit comfortably for more than fifteen or twenty minutes.  Id. at 245.  She said she could push a ten or fifteen pound item for about five yards and carry a five pound item for about ten minutes.  Id. at 246-47.   The plaintiff indicated that after an "hour's worth of sleep," she would "wake up and jump up and gasp for air," and that as a result of her lack of sleep, she needed to take five to ten thirty or forty-five minute naps a day.  Id. at 252-53.

According to the plaintiff, she was able to work after her period of disability for only about four months.  Id. at 247.  During that period, she was only able to work "about three days" a week, and while at work, she had to utilize a breathing machine every four to six hours.  Id. at 249.  The plaintiff said that her employment was terminated because her employer wanted someone with more "spunk."  Id. at 250.  When asked by the ALJ why she did not think she could do any job in the American economy, the plaintiff responded, "I [be]came accustomed to working with the mentally challenged, so it's just a field that I like."  Id.  at 251.  She testified that she wanted to stay in that field.  Id.

In evaluating the plaintiff's claim for benefits, the ALJ decided that the plaintiff was not disabled under the SSA.  Id. at 19.  The ALJ determined that she had the residual functional

capacity ("RFC") to perform "less light work with limitations" or "sedentary work."[2]  Id. at 22.

Among other limitations, he noted that the plaintiff would have to "avoid excessive dusts, fumes,

chemicals, poor ventilation, humidity, or wetness."  Id.  To the extent that her testimony

conflicted with this RFC, the ALJ found the plaintiff's statements about the "intensity,

persistence, and limiting effects of [her] symptoms" was not credible.  Id. at 23.  The ALJ

observed that "the [plaintiff] appeared alert and energetic at the hearing, despite alleging severe

breathing difficulties and fatigue.  Furthermore, when asked why she could not perform work of

a less exertional nature during the closed period, the claimant candidly stated that she enjoyed

working with mentally challenged people and wanted to stay within her career field."  Id. at 25.

The ALJ also found that the medical evidence in the record was inconsistent with the

plaintiff's allegation of total disability.  Id. at 24.  He afforded significant weight to an opinion by

Dr. Esther Pinder, M.D., a medical consultant who assessed the plaintiff in 2008.  Id.  Dr.

Pinder's report indicated her belief that the plaintiff could frequently lift ten pounds and

occasionally lift twenty pounds, sit for a total of six hours during an eight-hour work day, and

"[s]tand and/or walk (with normal breaks)" for a total of about six hours of an eight-hour work

day.  Id. at 180.  Dr. Pinder did opine that, in her opinion, the plaintiff should "avoid even

moderate exposure to extreme heat, wetness, and humidity" and "avoid all exposure to fumes,

odors, dusts, gases, [and] poor ventilation."  Id. at 183.  Nonetheless, Dr. Pinder concluded that

she believed the plaintiff could perform "light work."  Id. 184.  This assessment was affirmed by

---

[2]     ALJs are required to perform an RFC assessment when they evaluate certain disability claims.  20 C.F.R. § 404.1520.  Social Security Ruling ("SSR") 96-8p defines an RFC as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184 (July 2, 1996) at *1.  SSR 96-8p further provides that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."  Id.  It also states that the ALJ "must include a narrative discussion describing how the evidence supports each conclusion."  Id.

two other "state agency medical consultants," one of whom is a medical doctor.  Id. at 25, 200-01.

The ALJ also afforded great significance to an examination performed by Dr. Steven Lerner, M.D.  Id. at 24.  Dr. Lerner concluded that the plaintiff "appeared to be able to sit, stand, walk, lift, carry, handle objects, hear, speak or travel without difficulty."  Id. at 171.  Dr. Lerner further explained that he did not believe the impairments he observed explained the severe exercise intolerance expressed by the plaintiff.  Id. at 171-72.

The ALJ concluded that the record supported the conclusion that the plaintiff "retained the ability to perform light and sedentary unskilled work," id. at 25, "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy," id. at 27, and was therefore "not under a disability, as defined in the Social Security Act, from March 25, 2008 through June 4, 2009. . . ."  Id.

The ALJ therefore denied the plaintiff's claims in a written decision on November 24, 2009.  Pl.'s Mem. at 2; A.R. at 16-27.  The plaintiff then requested that the Social Security Appeals Council review the ALJ's decision.  Pl.'s Mem. at 2.  The Appeals Council did so and affirmed the ALJ's decision on September 24, 2010.  Id.  The plaintiff has therefore exhausted all of her administrative remedies, and the agency decision became final, id., before this action was initiated.

B.  The Parties' Arguments

The plaintiff argues that the ALJ's denial of her claims is not based on substantial evidence for several reasons.  Pl.'s Mem. at 1.  First, the plaintiff argues that the ALJ "erroneously assessed the plaintiff's residual functional capacity" or RFC.  Id. at 4-7. The plaintiff claims that the ALJ failed to assess her limitations on a function-by-function basis and

failed to set forth, in narrative form, his rationale for the RFC assessment.  Pl.'s Mem. at 6-7.

Second, the plaintiff argues that the ALJ did not properly consider the medical evaluation of Dr.

Pinder, who concluded that the plaintiff should "avoid even moderate exposure to extreme heat,

wetness, and humidity" and "avoid all exposure to fumes, odors, dusts, gases, [and] poor

ventilation."  A.R. at 183.  She contends that the ALJ "failed to include any of these limitations

in his [RFC] assessment, without explanation."  Pl.'s Mem. at 7-9.  Finally, the plaintiff argues

that the ALJ failed to consider pulmonary function testing results from September 2008 in

assessing her RFC.  Id. at 9-10.  These tests indicated that the plaintiff has a "moderate severe

restriction" and "severe obstruction."  A.R. at 199.

        The defendant argues that the ALJ's decision is supported by substantial evidence.  Def.'s

Mem. at 6-7.  First, the defendant argues that the ALJ complied with the requirements of Social

Security Ruling ("SSR") 96-8p.  Id. at 8-14.  Specifically, the defendant asserts that the ALJ

properly assessed and considered "all of the plaintiff's affected functions."  Id. at 9.  The

defendant also argues that the ALJ did provide a narrative discussion explaining the basis for his

RFC findings.  Id. at 10-13.  Second, the defendant asserts that the ALJ included the plaintiff's

environmental limitations in his RFC assessment.  Id. at 14-16.   In that assessment, he found

that the plaintiff "had to avoid concentrated exposure to excessive vibration, and avoid excessive

dusts, fumes, chemicals, poor ventilation, [and] humidity or wetness."  A.R. at 22.   The

defendant claims that in doing so, the ALJ adequately incorporated the findings of Dr. Pinder

into the plaintiff's RFC.[3]  Def.'s Mem. at 16.  Finally, the defendant argues that the ALJ

considered all of the evidence in the record, including the results of the plaintiff's September

---

[3]        The defendant's opposition memorandum references an examination performed by "Dr. Pander," see Def.'s
Mem. at 15-16; however, based on the administrative record, it is clear that the defendant actually intends to
reference an examination performed by Dr. Esther Pinder.  See A.R. at 179-86.

2008 pulmonary functioning tests.  Id. at 16-19.  The defendant contends that the ALJ did not need to cite all exhibits in order to show that he considered them.  Id. at 16-17.

## II.  STANDARD OF REVIEW

This Court has jurisdiction under 42 U.S.C. § 405(g) to review the final decision of the defendant, the Commissioner of Social Security.  However, this review is not de novo.  Pinkney v. Astrue, 675 F. Supp. 2d 9, 14 (D.D.C. 2009).  Rather, the Court must affirm the decision if it is based on substantial evidence.  42 U.S.C. § 405(g); Brown v. Bowen, 794 F.2d 703, 705 (D.C. Cir. 1986).  The substantial evidence standard "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence."  Fla. Mun. Power Agency v. Fed. Energy Regulatory Comm'n, 315 F.3d 362, 365-66 (D.C. Cir. 2003).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).   The plaintiff bears the burden of showing that the Commissioner's decision was not based on substantial evidence.  Jones v. Shalala, 1994 WL 776887, at *2 (D.D.C. August 31, 1994) .

While this standard of review is deferential to the Commissioner's decision, the Court must carefully scrutinize the "entire record to determine whether the Commissioner, acting through the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits."  Lane-Rauth v. Barnhart, 437 F. Supp. 2d 63, 65 (D.D.C. 2006)  (quoting Butler v. Barnhart, 353 F.3d 992, 999 (D.C. Cir. 2004)) (internal quotation marks omitted).  When the ALJ investigates claims before him, fairness dictates that he must do so fully and develop a comprehensive record on which to base his decision.  Simms v. Sullivan, 877 F.2d 1047, 1050 (D.C. Cir. 1989).  A reviewing court is tasked only with the evaluation of the ALJ's decision and his basis for it.  Pinkey, 675 F. Supp. 2d at 14.  Accordingly, "[t]he Court

will not disturb the [ALJ's] final decision if it is based on substantial evidence in the record and correctly applies legal standards."  Id.

### III.  LEGAL ANALYSIS

 As noted above, the plaintiff advances three arguments in support of her motion.  The Court finds the plaintiff's argument that the ALJ failed to incorporate her environmental limitations into his RFC assessment most persuasive, and it begins its analysis there.

A.  The ALJ's Incorporation of  the Plaintiff's Environmental Limitations into the RFC

Disability claims are evaluated under a five-step process.  20 C.F.R. § 416.920.  First, an ALJ must determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is not engaged in such activity, the ALJ must move on to the second step, which entails a determination of whether the claimant's impairments are medically severe.  20 C.F.R. § 416.920(a)(4)(ii).   If the impairment is severe, the ALJ moves to step three and considers whether the impairment "meets or equals" an impairment listed as disabling.  20 C.F.R. § 416.920(a)(4)(iii).   If the impairment does not qualify as a disabling impairment, the ALJ moves on to the fourth step and considers, after assessing the claimant's RFC, whether the claimant is able to perform her past work.  20 C.F.R. § 416.920(a)(4)(iv).   If the ALJ finds that the claimant is not able to perform her past work, he then moves to the final step and examines whether the claimant is capable of performing "other work" considering her age, education, past work experiences, and residual functional capacity."  20 C.F.R. § 416.920(a)(4)(v).

Here, the ALJ found that the plaintiff was not engaged "in substantial gainful activity" and that although her impairments were "severe," they did not meet or qualify as one of the listed impairments.  A.R. at 21-22.  The ALJ also found that the plaintiff was unable to perform her "past relevant work."  Id. at 25.  Finally, the ALJ concluded that, based on the testimony of a

vocational expert, "there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed." Id. at 26.

As noted above, the RFC assessment is relevant to steps four and five of the five-step analysis. SSR 96-8p defines the RFC as "the individual's <u>maximum</u> remaining ability to do sustained work activities in an ordinary work setting on a <u>regular and continuing</u> basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." SSR 96-8p, 1996 WL 374184 (July 2, 1996) at *1. In that discussion, the ALJ must address any evidence that contradicts his final RFC conclusion and explain why he discounted that evidence. <u>See</u> <u>Lane-Rauth</u>, 437 F. Supp. 2d at 67-68 (finding that an ALJ erred by discounting evidence supporting the plaintiff's claims without explaining his basis for doing so). Dr. Pinder's recommendation that the plaintiff should "avoid <u>even moderate exposure</u> to extreme heat, wetness, and humidity" and "avoid <u>all exposure</u> to fumes, odors, dusts, gases, [and] poor ventilation," A.R. at 183 (emphasis added), clearly contradicts the ALJ's conclusion that the plaintiff must "avoid <u>excessive</u> dusts, fumes, chemicals, poor ventilation, humidity, or wetness." Id. at 22 (emphasis added). The ALJ does not explain, at any point in the record, his finding that the plaintiff could withstand all but <u>excessive</u> amounts of pulmonary irritants in the face of Dr. Pinder's conclusion that the plaintiff could not tolerate <u>even moderate</u> amounts of these irritants. The fact that Dr. Pinder's conclusion is explicitly supported by two other medical personnel, <u>see</u> <u>id.</u> at 25, 200-01, in addition to the fact that the ALJ purports to have afforded significant weight to these three individuals' opinions, <u>see</u> <u>id.</u> at 25, renders this discrepancy all the more problematic. In order for the Court to properly review whether the ALJ's decision was based on substantial evidence, further explanation is required. The Court will therefore remand the case to the Social Security Administration so that the agency may provide that explanation, if one exists.

B.  The ALJ's Compliance with SSR 96-8p

Having found that the plaintiff is entitled to a remand on the issue of her environmental limitations, the Court addresses the plaintiff's other two arguments only because doing so may prove helpful to the ALJ on remand.

As noted above, SSR 96-8p, which provides guidance on developing the RFC, states, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184 (July 2, 1996) at *1.  The ruling also states:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

Id. at *7.  These requirements assure that the claimant is provided a full judicial review of the ALJ's decision.  See Lane-Rauth, 437 F. Supp. 2d at 67 ("The law requires . . . that the 'ALJ build an accurate and logical bridge from the evidence to [his] conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings.'") (quoting Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002) (internal quotations omitted)).

As the defendant—but notably not the plaintiff—acknowledges, see Def.'s Mem. at 14 n. 5, there is a split among members of this Court about whether a narrative function-by-function analysis is required under SSR 96-8p.  Compare Lane-Rauth, 437 F. Supp. 2d at 68 (Urbina, J.) (requiring a narrative function-by-function analysis) with Banks v. Astrue, 537 F. Supp. 2d 75, 84 (D.D.C. 2008) (Leon, J.) (finding such an analysis unnecessary).  In remanding for the reason

discussed above, the Court will not address whether the ALJ failed to provide an adequate

narrative for his function-by-function assessment.  As it did in Ross v. Astrue, 636 F. Supp. 2d

127, 134 n.4 (D.D.C. 2009) (Walton, J.), however, the Court notes that in light of the split in

authority on the subject, it would behoove the ALJ to provide (if not already provided) a

narrative function-by-function analysis of the plaintiff's capabilities in his findings following this

remand.

      C.  The ALJ's Consideration of the September 2008 Pulmonary Functioning Test Results

An ALJ's failure to cite specific evidence does not indicate that such evidence was not

considered in a Social Security disability case.  42 U.S.C. § 405(g); see also Dyer v. Barnhart,

395 F.3d 1206, 1211 (11th Cir. 2005) ("There is no rigid requirement that the ALJ specifically

refer to every piece of evidence in his decision."); Black v. Apfel, 143 F.3d 383, 386 (8th Cir.

1998) ("Although required to develop the record fully and fairly, an ALJ is not required to

discuss every piece of evidence submitted."); Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th

Cir.1996) (holding that the ALJ is not required to discuss every piece of evidence).  Thus, the

ALJ's failure to cite to one page, A.R. 199, of a 255-page record does not show that the

information appearing on that page was not adequately considered.  Furthermore, the plaintiff

makes no effort to explain her conclusion that this evidence contradicts the ALJ's RFC analysis.

See Pl.'s Mem. at 9-10 (offering a cursory conclusion that results of the pulmonary functioning

test conflicted with the ALJ's RFC assessment).  Accordingly, no error was committed by the

ALJ in regards to the pulmonary testing results.

## IV.  CONCLUSION

Because the ALJ's RFC assessment appears to conflict with a medical record he represents he relied upon, and because this conflict had direct implications on the accuracy of the testimony of the vocational expert, this case must be remanded to the Social Security Administration for further assessment and explanation of the plaintiff's residual functional capacity.[4]

SO ORDERED this 11th day of April, 2012.

REGGIE B. WALTON
United States District Judge

---

[4] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.